## Case No. 5,664.

### GRAHAM v. DOMINGUEZ.

[1 Am. Law T. Rep. U. S. Cts. 70.]

District Court, S. D. New York. May, 1868.

ARREST—FALSE REPRESENTATIONS—AGENT—BAIL.

The principle that governs a preliminary investigation as to bail, is, that if a reasonable cause of action is shown the defendant is held to bail.

At law.

Cram & Seward, for plaintiff.

Doolittle, Davis & Wyman, for defendant.

BLATCHFORD, District Judge. The written documents and affidavits in this case seem to me to put the propriety of the arrest and holding to bail of the defendant beyond any question. Exhibit No. 4, on the part of the plaintiff, is a contract signed by the plaintiff and Antonio Millan, and witnessed by the defendant, dated October 3, 1867, but shown to have been executed October 10, 1867, whereby Millan agrees to pay, or satisfactorily secure to be paid, to the plaintiff, within seventy-five days from October 3, 1867, the sum of 1,800,000 silver dollars, or soles de plata, or equivalent, and the plaintiff agrees to deliver at any place Millan may name, between certain parallels of latitude and longitude, as soon as practicable, the monitor Agamenticus, over 1,500 tons, with two turrets and four guns, fully armed and equipped in every respect for an engagement of four hours, in conformity to the regulations of the navy of the United States. Millan agrees to purchase the monitor at said price and upon said conditions, and also agrees to pay to the plaintiff a further sum of $40,000 in gold, or its equivalent, when the monitor is delivered. The contract further states that Millan has deposited with the plaintiff "the sum of $500,000 in bonds issued by Peru and Chili as collateral security for the faithful performance of his part of this contract, which collateral security shall be returned to him when his part of it has been fulfilled." The contract also states that "for the true and faithful performance of all and every of the covenants and agreements herein mentioned, the parties to these presents bind themselves each unto the other in the penal sum of $500,000, as fixed and settled damages to be paid by the failing party."

Simultaneously with the execution of the contract, Exhibit No. 4, that is, on the 10th of October, 1867, another paper was signed by Millan and delivered to the plaintiff, also dated October 3, 1867, which paper is Exhibit No. 7, on the part of the plaintiff. That paper is as follows: "It is hereby understood and agreed between John Graham and Antonio Millan, that in case of the nonfulfillment of a contract made and entered into this day, Millan will only receive $400,000 of bonds of Chili and Peru out of the deposit made this day of $500,000 by Millan; but if Millan's contract is carried out, Graham will return in the stipulated time the aforesaid bonds, amounting to $500,000." This expression, "return in the stipulated time," is explained by three other papers. One is Exhibit D, on the part of the defendant, dated October 3, 1867, and signed by the plaintiff. It reads thus: "Received from Go. Dominguez, by order of Dn. Antonio Millan, $270,000 in Chili and Peru bonds, in the following numbers, viz." Another is a

second Exhibit D, on the part of the defendant, dated October 9, 1867, and signed by the plaintiff. It reads thus: "Received from W. G. Dominguez, for order and account of Antonio Millan, Esq., $230,000 in bonds of Chili and Peru, which, with the $270,000 received by me on the 3d instant, complete the amount of $500,000, the numbers of which are as follows." After these bonds had been received by the plaintiff, the second instalment of them having been received on the 9th of October, the plaintiff gave to Millan an obligation, Exhibit C, on the part of the defendant, dated October 3, 1867, signed by the plaintiff, and reading as follows: "Seventy-five days after date I promise to return to Antonio Millan or order $500,000 in Chili and Peruvian bonds, intrusted to me, the description of which are described and inserted in the next page." The expression, the "stipulated time," in Exhibit No. 7, is thus shown to be seventy-five days from October 3, 1867. This was the same period of time as that named in Exhibit No. 4, as the time within which Millan was to pay, or satisfactorily secure to be paid to the plaintiff, the $1,800,000. All the papers which have been referred to must be construed together as furnishing a single transaction. The effect of them is that on a failure of Millan to pay or satisfactorily secure the $1,800,000, the plaintiff is to return to Millan $400,000 of the bonds, and is to retain $100,000 of them. Millan did fail to pay or secure the money. The bonds were put into the plaintiff's hands. He has returned $100,000 of them to Millan under an order dated February 4, 1868, signed by Millan and addressed to the plaintiff, and reading as follows: "Please deliver to Mr. Go. Dominguez 100 bonds of $1,000 each of the $500,000 you hold as a deposit for a certain contract." The $100,000 of bonds were delivered by the plaintiff to the defendant for Millan, and the defendant gave to the plaintiff a receipt for them, signed by the defendant, written on the order from Millan. It therefore appears that the plaintiff has the $100,000 of bonds, which he was to receive, and became entitled to retain. But those bonds, he alleges, are worthless in his hands. An official notification from the consul of Peru is put into the case, dated December 28, 1867, stating, under instructions from the Peruvian minister at Washington, that certain bonds (which, it is conceded, embrace the bonds in question) were delivered by the financial agents of Peru in New York, pursuant to instructions received by them from the legation of Peru in Washington, "to a certain party who was to hold them on deposit only, but who, in violation of good faith and of the confidence reposed in him, has improperly disposed of the same," and that "capitalists and all others are consequently cautioned against negotiating or purchasing the above-described bonds, and notified that the interest coupons attached thereto will not be paid, and holders of any of said bonds must look for indemnity to the party from whom they may have received them." The "party" referred to was Millan. Prima facie, therefore, and for the purposes of this motion, the title of the plaintiff to the bonds, and the right of Millan to turn them over to him, fail.

The only question therefore is, whether the defendant ought to be held to bail by reason of having made any false representations to the plaintiff in regard to the title of Millan to the bonds and the right of Millan to dispose of them. The written papers already referred to, and the affidavits on both sides in the case show that the defendant had the management and conduct, on the part of Millan, of all the transactions between the plaintiff and Millan, and that nothing ever transpired between the plaintiff and Millan except through the intervention of the defendant. The claim on the part of the defendant is that he was present at every interview which took place between the parties, and that he was the interpreter of everything that passed between them, for the reason that the plaintiff could not speak or understand Spanish, and could speak and understand English, and that Millan could speak and understand Spanish, and could not speak or understand English, and that the defendant could speak and understand both Spanish and English. The mere fact of depositing the bonds with the plaintiff by Millan as security to the purport stated, was a declaration and representation by Millan that the bonds were valid in his hands and that he had a right to make such a disposition of them, and the only question for consideration is whether the defendant joined in making such representation, knowing it to be untrue.

I think the connection of the defendant with Millan and with the plaintiff, and with the business transactions between them, as disclosed by his own affidavit and by the affidavit of Millan, was such as to show, prima facie, that he had all the knowledge which Millan had in regard to the bonds, and that he knowingly joined Millan in making to the plaintiff the false representation in regard to the bonds which is the foundation of the plaintiff's action. The principle that governs a preliminary investigation as to bail, is that if a reasonable cause of action is shown, the defendant is held to bail. Paraszet v. Gautier [Case No. 10,709]. My only difficulty is as to the amount of the bail. The right of action which the plaintiff has, on the papers, is to recover what the $100,000 of bonds would have been worth if they were recognized as valid by the governments issuing them. What that value is, is not shown on either side, that I have been able to find in the mass of papers. All that the plaintiff says in his affidavit is, that the whole half a million of bonds would have been, if valid, a sufficient collateral security for $141,280; and although Messrs. Leavitt and Sarsar state that the bonds turned over to the plaintiff have no market value, and that they are familiar with the bonds of the same issue, and have dealt in them and know their value, yet such value is not stated.

The application to discharge the defendant from arrest is therefore suspended to allow the parties to produce evidence as to what $100,000 of bonds of the same issue, the title to which in the hands of the holder was undisputed by the issuing governments and the interest on which they paid, were worth in the market, and for that amount the defendant must be held to bail.